**Melvin WILSON, Plaintiff,**

v.

**James SCHOMIG, Vernon Scott and Adrienne Johnson, Defendants.**

**No. 93 C 3854.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 30, 1994.

---

Melvin Wilson, pro se.

Cynthia J. Wood, Illinois Attorney General's Office, Barrington Duval Baker, Attorney General's Office, Chicago, IL, for defendants James Schomig, V. Scott, A. Johnson.

Susan Takata O'Leary, Illinois Dept. of Corrections, Chicago, IL, for Officer Hantolmann.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Melvin Wilson, an inmate at the Stateville Correctional Center in Joliet, Illinois ("Stateville"), brings this six count complaint against defendants Warden James Schomig, Case Worker Supervisor Vernon Scott and Adjustment Committee Chair Adrienne Johnson.[1] Before this court are defendants' motions for summary judgment. For the reasons set forth below, defendants' motion is granted in part and denied in part.

### I. Background [2]

Beginning in June 1989 plaintiff Wilson was assigned as a cell house helper at the

---

1. In his original complaint, Wilson also named Officer Kevin Hantolmann as a defendant. However, because Wilson did not effectuate service of process on Hantolmann he is not a defendant in this action.

2. While defendants have presented a list of uncontested facts pursuant to General Rule of the United States District Court of Northern District of Illinois ("Local Rule") 12(M), plaintiff has neither responded to these assertions nor added an additional statement of uncontested facts pursuant to Local Rule 12(N). We therefore accept

segregation unit of Stateville, known as I–House. After a brief lockdown at Stateville in June 1991, prison officials decided to re-evaluate the assignment of cell house helpers. Pursuant to this investigation Officer Kevin Hantolmann conducted a survey of the I–House staff. According to plaintiff, "Hantolmann was boasting about getting rid of some of the niggers from I–House Help and [said] that Warden Schomig gave him complete authority to pick and choose who he wanted to keep as cell house help in I–House." Plaintiff's Complaint at 4.[3]

On August 1, 1991, Wilson was terminated from his assignment at I–House along with 12 other inmates, and was reassigned to the B–East unit pursuant to orders given by Case Worker Scott. Wilson refused to be transferred to B–East, but rather, insisted that he be assigned to G–Dorm along with a majority of the other inmates who were moved from I–House. Because Wilson refused to pack his personal belongings and move to B–East, he alleges that retaliatory measures were taken against him by prison officials. First, he was placed in a segregation unit and was told he would not be reassigned until he agreed to move to B–East. Second, prison officials threatened to transfer Wilson to another facility if he continued to refuse his new assignment. Finally, Wilson received numerous disciplinary reports and administrative penalties for refusing to accept his cell assignment.[4]

On August 7, 1991, Wilson was moved to cell 3B05 in the segregation unit. Plaintiff alleges a myriad of problems with this cell: it was dirty and dusty, it was infested with roaches, the mattress was stained with urine and feces, the toilet had feces on and around it, the walls were covered with gang signs, and the ceiling leaked water when it rained. Plaintiff claims that he complained to the staff about these conditions, but that they refused to provide him with cleaning materials. However, plaintiff does admit that he was able to use another inmate's cleaning materials to properly clean the cell.

In January 1992, while plaintiff was still housed in cell 3B05, the heating system for "B wing" of the prison broke down. Consequently, plaintiff's cell was without heat for approximately three days while the temperature outside fell below freezing. Wilson claims that prison officials did not provide him with any kind of assistance during this period to help him deal with the cold temperatures.

On April 10, 1992, Wilson was moved to cell 3F11 in the segregation unit. Plaintiff also found this cell unfit to live in because it did not have any working electric lights. Wilson claims that he complained of this condition to the gallery officers on numerous occasions. Although a cell house helper came to fix the lights on May 19, 1992, he was unable to repair them at that time.

Wilson was moved to another unit, 3C12, on July 2, 1992. He contends that prison officials again threatened him that if he continued to refuse his new assignment, he would be transferred to another prison in the Southern District of Illinois and be placed with a cellmate. Wilson claims that because some of his enemies are housed at correctional facilities in the Southern District of Illinois, his life would be endangered if he was transferred there. Additionally, he claims that the last time he was assigned a cellmate the individual went through his belongings and subsequently testified against Wilson in a criminal trial. Faced with these threats, Wilson finally agreed on September 2, 1992 to be moved to the B–East section of Stateville.

Wilson, acting pro se, filed this six count complaint against defendants on June 25, 1993, pursuant to 42 U.S.C. § 1983. Defendant's now move for summary judgment on all of Wilson's claims, as well as on their defense of qualified immunity.

---

defendant's statement of uncontested facts as true, and glean the remaining facts from plaintiff's complaint.

3. Although he does not specifically allege it, we assume by the nature of his complaint that Wilson is an African–American.

4. The administrative penalties were ordered by Adjustment Committee Chair Adrienne Johnson for Wilson's failure to obey direct orders. The meting out of this punishment appears to be the sole basis of Johnson's liability.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has met this burden of production, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); *see Maxwell v. City of Indianapolis,* 998 F.2d 431, 433 (7th Cir.1993). In deciding a motion for summary judgment, the facts must be read in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Finally, pro se complaints such as Wilson's are to be construed liberally. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

## III. Discussion

Essentially, plaintiff makes three arguments as to how his rights secured under the United States Constitution were violated. First, he alleges that he was terminated as a cell house helper because of his race in violation of the Equal Protection Clause of the Fourteenth Amendment. Second, he claims that he was terminated as a cell house helper, and reassigned to the B–East section of Stateville, without a disciplinary hearing or due process in violation of the Due Process Clause of the Fourteenth Amendment. Third, he contends that the conditions of his confinement violated his rights under the Eighth Amendment.[5] Defendant's have moved for summary judgment on all counts,

as well as on their defense of qualified immunity.

### A. Equal Protection Claim

Although they do give up many rights of citizenship, "[p]risoners do not surrender their rights to equal protection at the prison gate." *Williams v. Lane,* 851 F.2d 867, 881 (7th Cir.1988), *cert. denied,* 488 U.S. 1047, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989). Racial discrimination in the administration of state prisons violates the Equal Protection Clause of the Fourteenth Amendment. *Black v. Lane,* 824 F.2d 561, 562 (7th Cir. 1987); *Harris v. Greer,* 750 F.2d 617, 618 (7th Cir.1984). Thus, a cause of action under § 1983 will lie where an inmate makes specific allegations of racial discrimination in the assignment of prison jobs. *Black,* 824 F.2d at 562.

Wilson alleges that Officer Hantolmann, after indicating his desire to remove blacks from cell house help, had his job terminated. Further, Wilson alleges that Schomig gave Hantolmann complete discretion to determine who would be allowed to remain in their work assignments. While these allegations may well state a claim with regard to Hantolmann—who is no longer part of this lawsuit—they do not suffice to hold any of the other defendants liable. It is well established that liability under § 1983 will attach to a defendant only where "she acts or fails to act with a deliberate indifference or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982). Although Warden Schomig had control over prison policy in general, there is no evidence that he was personally involved in or aware of Hantolmann's alleged practices of racial discrimination. *See Black v. Lane,* 22 F.3d 1395, 1401 n. 8 (7th Cir. 1994) (dismissal of Chief Administrative Officer who had no personal involvement in al-

---

5. Additionally, plaintiff claims that defendants violated his rights under the Sixth Amendment. However, we are unable to surmise what possible Sixth Amendment claim he could have arisen out of his confinement at Stateville. Consequently, we will view his complaint as raising claims under only the Eighth and Fourteenth Amendments to the United States Constitution.

leged conduct). Nor is there any allegation or evidence that Scott or Johnson engaged in racially discriminatory practices. Rather, Scott merely reassigned Wilson pursuant to his termination as a cell house helper, and Johnson penalized Wilson for his failure to follow prison rules. Therefore, since there is no evidence that defendants engaged in any racially discriminatory conduct, summary judgment on Wilson's equal protection claim is granted.

## B. Due Process

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Essentially, Wilson alleges that his termination as a cell house helper deprived him of either a liberty or property interest without due process.

■ However, it is settled law that prisoners in Illinois have neither a liberty nor a property interest in their work assignments. *Wallace v. Robinson*, 940 F.2d 243, 246–49 (7th Cir.1991) (en banc), *cert. denied*, — U.S. ——, 112 S.Ct. 1563, 118 L.Ed.2d 210 (1992). Thus, inmates in Illinois may be terminated from their jobs or reassigned for any reason—or no reason at all—without violating the Due Process Clause of the Fourteenth Amendment.[6] Because Wilson cannot establish the loss of a constitutionally protected property or liberty interest, his Due Process Claim must fail. We therefore grant defendants' motion for summary judgment as to Wilson's due process claims.

## C. Eighth Amendment

■ The Eighth Amendment prohibits the infliction of cruel or unusual punishment. U.S. Const. amend. VIII. The conditions of a prisoner's confinement in a state facility implicate the Eighth Amendment

only if the "prisoner is deprived of the 'minimal civilized measure of life's necessities.'" *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir.1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Conditions-of-confinement claims under the Eighth Amendment must satisfy both an objective and a subjective standard. *See Wilson v. Seiter*, 501 U.S. 294, 296–300, 111 S.Ct. 2321, 2323–25, 115 L.Ed.2d 271 (1991). The objective prong examines the nature of the alleged conditions, and asks whether such conditions "would be deemed cruel and unusual if prescribed in a state or federal statute as the lawful punishment for a particular offense[.]" *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992). Thus, not all unpleasant conditions of confinement will satisfy the objective component. "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399.

The subjective prong of the Eighth Amendment analysis looks at the intent of the defendants in the commission of the acts or practices that constitute the alleged punishment. "Punishment implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred for the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). In other words, defendants' actions must be wanton or with "deliberate indifference." *Wilson*, 501 U.S. at 302–03, 111 S.Ct. at 2326–27.

■ Wilson alleges that his confinement in cell 3B05 from August 7, 1991 to April 10, 1992 violated his Eighth Amendment rights.[7] At the outset, we dispose of

---

6. To be sure, the assignment of prison jobs may well violate other constitutional provisions. *See Black v. Lane*, 824 F.2d 561 (7th Cir.1987) (racial discrimination in job assignment); *Cale v. Johnson*, 861 F.2d 943, 948 (6th Cir.1988) (retaliation in violation of the First Amendment). However, neither Wilson's reassignment nor any alleged retaliation for his disobedience implicates these provisions.

7. We note that although Warden Schomig and Case Worker Scott might have some control over plaintiff's conditions of confinement—since Schomig has ultimate control over the prison and Scott apparently assigns inmates to particular cells—there is no indication that Adjustment Committee Chair Johnson had any personal involvement in the conditions of confinement or assignment of cells. *See Crowder v. Lash*, 687

plaintiff's claim that the cell contained dirt, dust and roaches, and that his ceiling leaked during rainstorms. Such conditions are not sufficiently serious to violate the objective standard of "cruel and unusual," and thus fail to state a claim based on the Eighth Amendment. *See Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir.1988) ("filthy, roach-infested cell" did not violate constitutional standards of decency); *Shrader v. White*, 761 F.2d 975, 983 (4th Cir.1985) (leaky roof); *cf. Thompson v. Illinois Dept. of Corrections*, 1990 WL 36764, at \*2, 1990 U.S.Dist. LEXIS 2182, at \*3–4 (N.D.Ill. February 28, 1990) (leaky roof in vocational and academic buildings did not satisfy objective prong). Although a closer call, plaintiff's claim with regard to the urine and feces stained mattress also falls short of the objective standard of seriousness. Indeed, while not a pleasant condition of confinement, there is no allegation that Wilson suffered any physical harm from the stains on his mattress. *See Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir.1994) (failure to provide personal hygiene items failed objective prong). Nor can the combination of these conditions support an Eighth Amendment claim, since they do not have "a mutually enforcing effect that produces the deprivation of a single, identifiable human need...." *Wilson*, 501 U.S. at 303, 111 S.Ct. at 2327. Thus, since plaintiff cannot satisfy the objective prong of the Eleventh Amendment analysis with regard to these claims, defendants' are entitled to summary judgment.

Plaintiff also claims that his confinement from April 10, 1992 to July 2, 1992 in segregation unit 3F11 violated his Eighth Amendment rights. However, his only complaint about this cell is its lack of operating electrical lights. Without an allegation of more—such as total light deprivation—we find that inadequate lighting does not so offend "the evolving standards of decency that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346, 101 S.Ct. at 2399. Furthermore, the fact that prison offi-

cials did send a cell house helper to fix Wilson's light fixture militates against a finding of *deliberate* indifference. Because Wilson's allegations about cell 3F11 fail to satisfy either the objective or subjective components of the Eighth Amendment analysis, we grant defendants' motion with regard to those claims.

However, some of plaintiff's conditions-of-confinement claims do survive defendants' motion for summary judgment. First, plaintiff's claim that feces was on and around his toilet and that he was denied cleaning supplies for some period of time raises a sufficiently serious contention for Eighth Amendment purposes. *See Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir.1989) (placing inmate in cell for three days with feces on walls and no cleaning supplies violated objective standard). Wilson alleges that he informed prison officials of the mess in his cell, and that they refused to provide him with cleaning supplies. Defendants have not denied that his cell was so messed, nor have they offered any explanation for their failure to provide Wilson with cleaning supplies, nor is it clear when he finally received cleaning materials from a fellow inmate. Thus, it appears that genuine issues of fact exist as to whether defendants acted with the requisite intent. Although Wilson's accusations may well prove meritless, defendants have failed to satisfy their burden of demonstrating that they are entitled to judgment as a matter of law.

Nor have defendants' met their burden with regard to Wilson's claim that his cell was not heated for a period of three days in January, 1992. While an allegation of inadequate heating by itself may not necessarily state a claim under the Eighth Amendment, the combination of inadequate heating, below freezing temperatures, and failure of prison officials to ameliorate the cold may well support a claim of unconstitutional confinement. As stated by the Supreme Court,

---

F.2d 996, 1005 (7th Cir.1982) (defendant must either act with deliberate indifference or know of deprivation and consent to it to be held liable). Rather, Johnson was sued for her imposition of penalties against Wilson in connection with his

numerous disciplinary reports. Because we have granted summary judgment as to all claims that could implicate Johnson, she is dismissed from this lawsuit.

*Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.

*Wilson,* 501 U.S. at 303, 111 S.Ct. at 2327 (emphasis in original); *Lewis v. Lane,* 816 F.2d 1165, 1171 (7th Cir.1987) (inmate claimed inadequate heating). Wilson has clearly alleged conditions which would satisfy the objective prong of the test.

Further, defendant asserts that he repeatedly complained of the lack of heat to prison officials. Failure of the prison's heating system during the month of January is a condition defendants would be expected to know of and rectify through the distribution of blankets, reassignment of inmates to other cells, or some other measures. Instead of showing such action on their part, defendants merely assert that the "heating system was subsequently repaired." Defendant's Motion at 2. In sum, defendants have not satisfied their burden in moving for summary judgment on the issue of Wilson's confinement, and their motion is therefore denied.

### D. Qualified Immunity

■ Defendants also move for summary judgment on grounds that they are protected by qualified immunity. Government officials are entitled to qualified immunity for their official actions unless their conduct violates a "clearly established" right of which a reasonable person would have known. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To determine if defendants are entitled to qualified immunity, we must first decide "whether the alleged conduct violated the plaintiff's constitutional rights, and then, if the rights were violated, whether they were clearly established at the time the violation occurred." *Sherman v. Four County Counseling Center,* 987 F.2d 397, 410 (7th

Cir.1993); *Harms v. Godinez,* 829 F.Supp. 259, 264 (N.D.Ill.1993).

With regard to plaintiff's claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, we have already determined that his constitutional rights were not violated. Therefore, we need not address the issue of qualified immunity with regard to those claims. However, plaintiff does properly allege a violation of his Eighth Amendment right to be free from cruel and unusual punishment, and defendants have failed to establish that they are entitled to judgment as a matter of law on all of these claims. Assuming plaintiff can prove that defendants violated his Eighth Amendment rights, defendants still claim they are entitled to qualified immunity. While we express no opinion as to plaintiff's ultimate ability to prove his alleged violation, it is clear that defendants' claims of qualified immunity must be denied.

■ Plaintiff alleges (1) that the temperature in his cell fell below freezing during three days in January 1992 and (2) that defendants refused to provide him with materials to clean the feces from his cell. Defendants' would have us conclude that the failure to take any steps to protect the health of an inmate residing in a freezing cold cell, or the failure to clean up human feces from inside an inmate's cell, does not violate any "clearly established" right held by the prisoner. However, given the decisions of the Supreme Court and the Seventh Circuit on these issues, we find that such rights are indeed "clearly established." *See Wilson,* 501 U.S. at 303, 111 S.Ct. at 2327 (noting deprivation involved in the combination of cold temperatures and refusal to provide blankets); *Lewis v. Lane,* 816 F.2d 1165, 1171 (7th Cir.1987) (inadequate heating); *Johnson,* 891 F.2d at 139 (feces on wall). Therefore, we deny defendants' motion for summary judgment on the applicability of qualified immunity.

### IV. Conclusion

For the reasons set forth above, defendants' motion is granted in part and denied

in part.[8] It is so ordered.

---

8. Perhaps defendants might have successfully resolved some of plaintiff's other complaints on summary judgment had they made the effort to address them more thoroughly in their motion.