

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-24-2004

# Burkholder v. Newton

Precedential or Non-Precedential: Non-Precedential

Docket No. 00-2939

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Burkholder v. Newton" (2004). *2004 Decisions.* Paper 121.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/121

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 00-2939
_____

WILLIAM M. BURKHOLDER,

Appellant

v.

ANDREW NEWTON, M.D.; MARESCA, Hearing Officer; JOHN
PARCELL, C.O.

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 00-cv-00923)
District Judge: Honorable James F. McClure
_____

Argued on December 15, 2003

Before: ROTH, MCKEE and ROSENN, Circuit Judges

(Opinion filed November 24, 2004 )

Robert O. Lindefjeld, Esquire (Argued)
Joseph P. Donohue, Esquire
500 Grant Street, 31st Floor
Pittsburgh, PA 15219

**COUNSEL FOR APPELLANT**

Alan S. Gold, Esquire (Argued)
Gold Butkovitz & Robins
7837 Old York Road
Elkins, Park, PA 19027

John J. Talaber, Esquire (Argued)
Pennsylvania Department of Corrections
Office of Chief Counsel
55 Utley Drive
P.O. Box 598
Camp Hill, PA 17011

**<u>COUNSEL FOR APPELLEES</u>**

---

O P I N I O N

---

ROTH, Circuit Judge:

William Burkholder, a prisoner at the Pennsylvania Correctional Institution in Coal Township, brought a 42 U.S.C. §1983 action in which he alleged violations of his right to remain silent, his right to due process of law, and his right against cruel and unusual punishment. All of these claims arose out of a report by Dr. Andrew Newton, a prison psychiatrist, that Burkholder had made threats against Correctional Officer John Parcell. The report resulted in a disciplinary hearing as a result of which Burkholder was sentenced to 30 days lock-up in the Restricted Housing Unit (RHU). Burkholder named Dr. Newton, Officer Parcell, and Nichole Maresca, who presided at the disciplinary

2

hearing, as defendants in the action. The District Court granted defendants' motion to dismiss Burkholder's complaint for failure to exhaust his administrative remedies. We will affirm but on other grounds, as stated below.

## I.     Factual Background and Procedural History

Burkholder alleges that Officer Parcell made numerous unwanted sexual gestures toward him over a one-month period. More specifically, Burkholder claims that Officer Parcell blew kisses at him, allegedly making Burkholder fearful of a future sexual assault.

On December 3, 1999, Burkholder's name appeared on a call sheet, which required him to meet with the prison psychiatrist, Dr. Newton. During that meeting, Burkholder reported Officer Parcell's alleged misconduct to Dr. Newton. Burkholder then said that he would harm Officer Parcell if this conduct continued. Dr. Newton immediately reported this threat to prison officials.

A misconduct hearing was held, presided over by Maresca. Burkholder claims that Maresca had in the past seen Burkholder in connection with certain psychological problems and had knowledge of psychiatric information about him. Burkholder contends that Maresca, because of her knowledge, could not be an impartial hearing officer. Maresca sentenced Burkholder to thirty days lock-up in the RHU. Burkholder alleges that his cell in the RHU was cold and that his malfunctioning toilet often backed up human waste into his cell. Burkholder does not claim that he notified the prison officials of these conditions.

3

On his release from RHU, Burkholder filed a grievance with prison officials regarding Parcell's conduct and the conditions of his RHU cell. He also alleged that Dr. Newton violated his rights by reporting his threats to prison officials and that Maresca violated his due process rights because she was not an impartial adjudicator. After his grievance failed, he filed a complaint in the Court of Common Pleas of Northumberland County. The case was removed to federal court by the defendants. The defendants then filed a motion to dismiss, alleging that Burkholder did not exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. §1997e(a) because he did not make a final appeal of his grievance to prison officials. Defendants also asserted that his §1983 claim did not make out any violations cognizable under the United States Constitution. The District Court ordered the dismissal of Burkholder's complaint for failure to exhaust administrative remedies.

## II. Jurisdiction and Standard of Review

We have jurisdiction in this case pursuant to 28 U.S.C. §1291. We exercise plenary review over the District Court's grant of defendants' motion to dismiss. Broselow v. Fisher, 319 F.3d 605, 607 (3d Cir. 2003). A pro se complaint must be liberally construed and can be dismissed only if it appears to a certainty that the complainant can prove no set of facts which would entitle him to relief. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## III. Discussion

4

The District Court dismissed Burkholder's claims for failure to exhaust his administrative remedies. Generally, absent exceptional circumstances, we will not consider issues that were not ruled on by the District Court. Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 428 (3d Cir. 2003). This rule, however, is "one of discretion rather than jurisdiction." Selected Risks Ins. Co. v. Bruno, 718 F.2d 67, 69 (3d Cir. 1983). Such circumstances present themselves when they comport with "the interests of justice and fairness," Abrams v. United States Dep't of Navy, 714 F.2d 1219, 1221 n.5 (3d Cir. 1983), and "where the proper resolution is not in doubt." Homar v. Gilbert, 89 F.3d 1009, 1021 (3d Cir. 1996). Because we find Burkholder's §1983 claims completely lacking merit, we will exercise this discretion and affirm the District Court's ruling on the merits of the case.

## A. Burkholder's Claims Against Officer Parcell

Burkholder has made only one claim against Officer Parcell – that Parcell would "blow kisses" to Burkholder, causing him to fear that Officer Parcell was going to sexually assault him. This conduct, while unprofessional if it is true, does not state a claim under §1983. It is well established that "[a]llegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. §1983." Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996). See Patton v. Przybylski, 822 F.2d 697 (7th Cir. 1987) (holding that mere derogatory remarks do not make out a constitutional violation); Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987) (explaining

5

that verbal threats will not violate the Fourteenth Amendment unless accompanied by physical force or a present ability to effectuate them); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (ruling that "it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong"). Section 1983 claims are based on constitutional violations and have a different threshold level than a simple tort action. Burton v. Livingston, 791 F.2d 97, 99 (8th Cir. 1986). Simply blowing kisses to an inmate does not make out a constitutional cause of action.

### B. Burkholder's Claims Against Dr. Newton

Burkholder's case against Dr. Newton is also without merit. Dr. Newton had no duty to give Miranda warnings to Burkholder and did not violate Burkholder's rights by reporting Burkholder's threats to prison officials. Burkholder's contention that he should have been read his Miranda rights before his meeting with Dr. Newton is erroneous. Miranda v. Arizona established the proposition that the "prosecution may not use statements . . . stemming from a custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). A custodial interrogation is an "inquiry conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought" and that is held in "custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and to compel him to speak." Id at 467; Garner v. United States, 424 U.S. 648, 657

6

(1976). Furthermore, the statements must be likely to elicit an *incriminating* response --

that is, one that carries criminal penalties. Rhode Island v. Innis, 446 U.S. 291, 300-01

(1966). In this case, Burkholder was not in custody, Dr. Newton was not interrogating

Burkholder about possible illicit activity, and Burkholder's statements were not used

against him in a criminal setting.

Just because Burkholder was already in prison does not mean that he was in a

custodial setting. As explained by the Fourth Circuit Court of Appeals, Miranda

warnings are not required prior to all prisoner interrogations, but only when there is a

"change in the surroundings of the prisoner which results in an added imposition on his

freedom of movement." United States v. Conley, 779 F.2d 970, 973 (4th Cir. 1985)

(quoting Cervantes v. Walker, 589 F.2d 424, 428 (9th Cir. 1978)); accord Flittie v. Solem,

751 F.2d 967 (8th Cir. 1985); United States v. Schalf, 725 F.2d 1272 (10th Cir. 1984);

Garcia v. Singletary, 13 F.3d 1487 (11th Cir. 1994). Such a change in surroundings could

include the imposition of handcuffs or being taken to a locked room to be questioned by

correctional officers. See Conley, 779 F.2d at 970. Here, Burkholder claims that he was

asked to go see Dr. Newton and that if he did not go, he would be written up. Burkholder

does not state that he was restrained in any way once in Dr. Newton's presence or that he

could not leave the interview room. Therefore, on the face of the complaint, we cannot

say that Burkholder was in a custodial setting.

Regardless of whether Burkholder was in a custodial setting, Burkholder does not

7

even contend that Dr. Newton was interrogating him. A prison psychologist is required to give <u>Miranda</u> warnings before conducting an interrogation. <u>See</u> <u>Estelle v. Smith</u>, 451 U.S. 454, 465 (1981) ("The fact that respondent's statements were uttered in the context of a psychiatric examination does not automatically remove them from the reach of the Fifth Amendment."). However, "[u]nless the Government *seeks* testimony that will subject its giver to criminal liability, the constitutional right to remain silent absent immunity does not arise." <u>Garner v. United States</u>, 424 U.S. 648, 655 (1976) (emphasis added). Additionally, the interrogator must be aware of the "potentially incriminating nature of the disclosures sought." <u>United States v. Morales</u>, 834 F.2d 35, 38 (2d Cir. 1987). There is no indication that Dr. Newton was seeking incriminating statements from Burkholder. Burkholder contends that Dr. Newton did ask him some questions, but nowhere does he allege that Dr. Newton was asking Burkholder questions about any possible criminal or otherwise illicit activities. Burkholder's threat was freely and spontaneously made. Because his threat against Officer Parcell was not a result of any interrogation, Burkholder's Fifth Amendment claims are baseless.

Additionally, Burkholder's statements were not used against him in a criminal setting. <u>See</u> <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318 (1976). Such statements, even if in violation of <u>Miranda,</u> are admissible if the statements were not used to increase the prisoner's criminal sentence. <u>See</u> <u>Baxter</u>, 425 U.S. at 318; <u>Chavez-Raya v. INS</u>, 519 F.2d 397 (7th Cir. 1975) (ruling that a confession obtained in violation of <u>Miranda</u> could be

8

used at a deportation hearing).  Burkholder was put in the restrictive housing unit for thirty days but he claims no other ramifications from the disciplinary hearing.

We also note that there is no question that Dr. Newton's report of Burkholder's threatening remarks was proper and did not violate any of Burkholder's substantive due process rights.  Prison doctors have an absolute obligation to report threats made within the prison, and there is no substantive due process violation when a prison psychiatrist reports a threat that a prisoner makes against a prison guard.  See Emerich v. Philadelphia Ctr. for Human Development, Inc., 554 Pa. 209 (1998); Ms. B. v. Montgomrey Cty. Emergency Srvcs, Inc., 799 F. Supp. 534 (E.D. Pa. 1992).

### C. Burkholder's Procedural Due Process Claim Against Maresca

Burkholder also claims that he was denied procedural due process at his disciplinary hearing.  We conclude that this claim is meritless as well.  In order to make out a due process claim, Burkholder must show that he was deprived of a liberty interest.  However, as noted by the Supreme Court in Sandin v. Conner:  "[D]iscipline in segregated confinement d[oes] not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."  515 U.S. 472, 484 (1995).  The Supreme Court in Sandin found there was no liberty interest in having to spend thirty days in lock-up –  the exact penalty that Burkholder faced.  Id.  Without a recognized liberty interest, there can be no violation of the due process clause.

In addition, a prisoner's right to an impartial adjudicator is necessarily weaker in

9

the context of a disciplinary hearing. As noted by the Supreme Court, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). For this reason, the burden of proof in a disciplinary hearing does not have to be beyond a reasonable doubt. There is no right to counsel at such hearings, the prisoner may be prohibited from cross-examining witnesses, and evidence that would be excluded in a normal prosecution can be used. See Rusher v. Arnold, 550 F.2d 896, 899-901 (3d Cir. 1977). It is generally true that a prisoner has a right to have a disciplinary hearing conducted by an impartial decision maker, Withrow v. Larkin, 421 U.S. 35, 46-47 (1975), but the constitutional standard for impermissible bias is extremely high in such a setting. Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 821 (1986). In fact, adjudicators enjoy a presumption of honesty and integrity, and "the mere exposure to [other] evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members . . .." Withrow, 421 U.S. at 47, 55. It is "only in the most extreme cases" where disqualification due to bias or prejudice would be constitutionally required. Aetna Life Ins. Co., 475 U.S. at 821.

Burkholder does not present such an extreme case. Burkholder claims that the adjudicator in this case, Nichole Maresca, knew confidential information about Burkholder's mental history and thus could not be impartial. As directed by the Supreme Court, we will assume that Maresca is a woman "of conscience and intellectual discipline,

10

capable of judging a particular controversy fairly on the basis of its own circumstances."

Withrow, 421 U.S. at 55. Burkholder has not alleged any faults of Maresca except for this limited knowledge, and without more this claim is also dismissed.

### D. Burkholder's Eighth Amendment Claim

Finally, Burkholder claims that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when he was placed in the restricted housing unit of the prison for thirty days. He complains that his cell was so cold that it caused pain in his legs. He also asserts that his toilet was unsanitary, often backing up into his cell and causing him to fear for his safety. It is questionable if having a cold cell or a toilet that backs up sometimes is really an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Courts have found that the Eighth Amendment is not violated in much more harsh conditions. See Peterkin v. Jeffes, 855 F.2d 1021, 1026-28 (3d Cir. 1998) (holding that being made to sleep on dirty mattress on floor did not make out an Eighth Amendment claim); Blizzard v. Watson, 892 F. Supp. 587, 591, 598 (D. Del. 1995) (dismissing an Eighth Amendment claim where plaintiff claimed he was awakened "by urine splashing on his leg from a prisoner using the toilet near his bed"); Wilson v. Schonig, 863 F. Supp. 789, 794-95 (N.D. Ill. 1994) (ruling that without a showing of physical harm, claim that inmate was forced to sleep on urine and feces-stained mattress in dirty, roach-infested, leaky cell was not enough to make out an Eighth Amendment claim). Moreover, even if his conditions

11

were objectively harsh, Burkholder must also show that the prison authorities acted with "deliberate indifference" to those conditions.  See Farmer v. Brennan, 511 U.S. 825 (1994).  Burkholder makes no such claims on the face of his complaint; indeed, he made no allegation that he complained about these conditions while he was in RHU.  Thus his Eighth Amendment claims fail to state a claim upon which relief can be granted.

## IV. Conclusion

For the reasons stated above, we will affirm the judgment of the District Court, granting defendants' motion to dismiss.