Selma GEDER, Plaintiff,

v.

Salvador A. GODINEZ, Melvin Allen, L. Manning, D. Williams, A. Johnson, T. Clevenger, F. Mussatto, J. Acosta and John Doe's and Jane Doe's of I.D.O.C., Defendants.

No. 92 C 2100.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 28, 1995.

Selma Geder, pro se plaintiff.

David S. Rodriguez, Asst. Atty. Gen., Gen. Law Div., Illinois Atty. General's Office, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Prison inmate Selma Geder brought this action under 42 U.S.C. § 1983, contending that several prison officials violated his constitutional rights. Defendants now move for summary judgment pursuant to FED.R.CIV.P.

56. For the reasons set forth below, their motion is granted in part and denied in part.

### Facts

Selma Geder ("Mr. Geder"), proceeding *pro se,* is incarcerated at the Stateville Correctional Center ("Stateville") in Joliet, Illinois. Defendants are the following employees of the Illinois Department of Corrections at Stateville: Warden Salvador A. Godinez ("Mr. Godinez"), Grievance Officer Melvin Allen ("Mr. Allen"), Correctional Officer Lieutenant Luther Manning ("Lt. Manning"), Correctional Officer Darryl Williams ("Mr. Williams"), and Adjustment Committee members Adrienne Johnson ("Ms. Johnson"), Timothy Clevenger ("Mr. Clevenger"), Frank Mussatto ("Mr. Mussatto"), and Jose Acosta ("Mr. Acosta").

On the evening of October 15, 1991, Mr. Geder was issued a disciplinary report (known as a "ticket") for Insolence and Disobeying a Direct Order. The basis for the ticket is contested by the parties. According to the defendants, Mr. Geder was walking out of the Unit B–West Tunnel toward the Commissary past approximately ten other inmates on the morning of October 14, 1991. Lt. Manning ordered Mr. Geder to return to the B–West Tunnel three times, telling him to wait in line like the other inmates. Defendants claim that after Mr. Geder ignored the orders, Lt. Manning directed Mr. Geder to surrender his identification card three times, but Mr. Geder refused and proceeded to walk away from the B–West Tunnel Gate. At that point, Lt. Manning cuffed Mr. Geder's hands and placed him in administrative segregation pending an investigation of the incident.

According to Mr. Geder, Lt. Manning asked him to return to the B–West Tunnel without provocation, and he immediately complied. Nevertheless, when Mr. Geder arrived at the B–West Tunnel Gate, Lt. Manning cuffed his hands and walked him to segregation. On the way to segregation, Lt. Manning told Mr. Geder that because he continued to file grievances against Lt. Manning's co-workers, Lt. Manning would ensure that Mr. Geder would be "out of the way" during the upcoming Audit Inspection so that

he could not discuss his grievances with anyone. Mr. Geder remained in segregation until October 29, 1991.

On October 21, 1991, an Adjustment Committee convened a hearing on the disciplinary report. At the hearing, Mr. Geder pleaded not guilty, requested permission to take a polygraph test, and requested that Sergeant Tadlock ("Sgt. Tadlock") be allowed to appear as a witness on his behalf. The hearing was continued for further investigation. On October 24, 1991, Mr. Geder filed an emergency grievance with Mr. Godinez in which he requested an immediate release from segregation and permission to take a polygraph test. In the grievance, Mr. Geder also stated that several of the statements he had made at the hearing were either misquoted in, or omitted from, the Adjustment Committee Summary. On October 28, 1991, Mr. Godinez denied Mr. Geder's grievance, and forwarded it to the Institutional Grievance Officer, Mr. Allen.

On October 29, 1991, the Adjustment Committee reconvened to consider the disciplinary report. The Committee considered the testimony of witnesses Sgt. Tadlock and Mr. Williams, as well as the positive photo identification of Mr. Geder by Lt. Manning. However, Mr. Geder was not present. At the conclusion of the hearing, the Committee found Mr. Geder guilty of the violations and recommended that he be disciplined with placement in segregation for fifteen days, demotion to C-grade for one month, and denial of commissary privileges for three months. An executive designee of Mr. Godinez approved and signed the Adjustment Committee Summary. On November 1, 1991, Mr. Allen received Mr. Geder's grievance of October 24, 1991. Mr. Allen denied the grievance on December 17, 1991, and Mr. Godinez concurred in the denial of Mr. Geder's grievance.

In this action, Mr. Geder alleges that defendants violated his constitutional rights by (1) fabricating the disciplinary ticket in retaliation for his filing of grievances relating to poor prison conditions, (2) denying his repeated requests to take a polygraph test, (3) refusing to watch the film from a camera located at the B–West Tunnel Gate which allegedly recorded the events at issue, (4) misquoting his statements on the Adjustment Committee report, (5) denying him the opportunity to attend the October 29, 1991 hearing, (6) placing him in segregation during the investigation, (7) failing to provide him with his court documents and other personal property during his stay in segregation, and (8) failing to improve Stateville's living conditions.

### Analysis

■ Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56. The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the moving party has sustained the initial burden, the opposing party may not avoid judgment by resting upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett, supra,* 477 U.S. at 324, 106 S.Ct. at 2553. However, *pro se* litigants are not held to the same stringent standards as formally trained attorneys, and their pleadings are to be liberally construed. *Harms v. Godinez,* 829 F.Supp. 259, 261 (N.D.Ill.1993) (citing *Caldwell v. Miller,* 790 F.2d 589, 595 (7th Cir.1986)); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988) (citations omitted).

### A. *Official Capacity Claims*

■ Mr. Geder has sued all defendants in their official and individual capacities. However, all of the named defendants are state prison officials. A suit for damages against a state official acting in his or her official capacity is a suit against the state, and is barred by the Eleventh Amendment to the

U.S. Constitution. *Estate of Porter v. State of Illinois*, 36 F.3d 684, 690 (7th Cir.1994) (citations omitted); *Duckworth v. Franzen*, 780 F.2d 645, 649 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986) (citations omitted); *Hawkins v. O'Leary*, 729 F.Supp. 600, 601 (N.D.Ill.1990) (citations omitted). Accordingly, Mr. Geder's damages claims against all defendants in their official capacities must be dismissed.

## B. *Individual Capacity Claims*

### 1. *Retaliation*

■ Mr. Geder first claims that Lt. Manning issued him a false disciplinary ticket in retaliation for the exercise of his constitutionally guaranteed right to submit written grievances about Stateville's living conditions. Prison inmates have a protected First Amendment right to submit written and oral complaints about prison conditions, and where there is evidence of retaliation against constitutionally-protected speech, the protection of prisoners' due process rights does not shield prison employees from a Section 1983 claim. *Sutton v. Johnson*, No. 91 C 1357, 1993 WL 179528, at *4 (N.D.Ill. May 25, 1993) (citation omitted); *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir.1987) (quoting *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir.1978)) ("it is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper").[1]

■ To state a claim for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir.1994) (citations omitted); *Cain v. Lane, supra*, 857 F.2d at 1142–43.[2] In this case, Mr. Geder insists that Lt. Man-

ning issued him a false disciplinary ticket solely because Mr. Geder filed grievances which implicated Lt. Manning's co-workers. To support this claim, Mr. Geder submits an affidavit, in which he relates his account of the B–West Tunnel incident, and three written grievances filed days before the B–West Tunnel incident complaining of poor prison conditions and the unwillingness of certain Stateville officials to improve them.

In support of their motion, the defendants fail to submit any evidence showing an absence of a genuine issue of material fact on the retaliation claim. Instead, they attempt to dispose of the retaliation claim by citing *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir.1984), for the proposition that "an allegation of a false disciplinary report does not state a cause of action where the inmate received procedural due process protections as set forth in *Wolff v. McDonnell*, 418 U.S. 539 [94 S.Ct. 2963, 41 L.Ed.2d 935] (1976 [1974])." Motion, p. 3. However, the defendants' reliance on *Hanrahan* is misplaced; in *Black v. Lane, supra*, 22 F.3d at 1402, the Seventh Circuit held that the issuance of false disciplinary charges can violate substantive due process if the charges were brought in retaliation for the exercise of a constitutional right.[3] *Id.* Accordingly, the defendants have failed to meet their initial burden of coming forward with evidence to show the absence of a genuine issue of material fact with respect to the retaliation claim.

■ However, there is no doctrine of superiors' liability in Section 1983 suits; defendants who are sued in their individual capacities can be held liable only for their individual wrongdoing. *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir.1985) (citation omitted); *Del Raine v. Carlson*, 826 F.2d 698, 707 (7th Cir.1987) (citations omitted). Therefore, Mr. Geder's claim of retaliatory treatment

---

1. This rule of law was sufficiently well established at the time of the alleged violation such that a reasonable person would have known about it. *See Burns v. Reed*, No. 93–1711, 1995 WL 3243, at *1–2 (7th Cir. Jan. 5, 1995) (citations omitted); *Armstrong v. Peters*, No. 92 C 7156, 1994 WL 542764, at *1 (N.D.Ill. Oct. 3, 1994) (citation omitted). Accordingly, the defendants are not entitled to qualified immunity from Mr. Geder's retaliation claim.

2. Conversely, a complaint which alleges "merely the ultimate fact of retaliation" is insufficient. *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985).

3. The Seventh Circuit distinguished *Hanrahan* and *McKinney v. Meese*, 831 F.2d 728 (7th Cir. 1987), as cases in which the plaintiffs did not allege retaliation for the exercise of a constitutional right. *Id.*, 22 F.3d at 1402, n. 11. This case, however, falls squarely within *Black*.

must be considered on a defendant-by-defendant basis. *Burton v. Kuchel,* 865 F.Supp. 456, 467 (N.D.Ill.1994).

As to Mr. Godinez, Mr. Allen, Mr. Williams, Ms. Johnson, Mr. Clevenger, Mr. Mussatto, and Mr. Acosta, Mr. Geder has not alleged, nor produced any evidence suggesting, that retaliation was even a remote factor in their respective decisions. Rather, Mr. Geder seems to be suing these defendants for alleged due process deficiencies in the disciplinary proceedings and Eighth Amendment violations relating to conditions of confinement. However, Mr. Geder has sufficiently demonstrated for purposes of this motion that retaliation was a substantial factor in Lt. Manning's decision to issue him the disciplinary ticket. Hence, Mr. Geder has presented a viable claim of retaliation only as to Lt. Manning. As to all other defendants, summary judgment on the retaliation claim will be granted.

### 2. *Disciplinary Proceedings*

█ Mr. Geder next claims that he was denied due process of law when certain defendants denied his repeated requests to take a polygraph test, refused to watch the film from a camera located at the B–West Tunnel Gate which allegedly recorded the events at issue, misquoted his statements on the Adjustment Committee report, and denied him the opportunity to attend the October 29, 1991 hearing. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the U.S. Supreme Court established the minimum procedural due process requirements to be afforded to prison inmates in disciplinary proceedings: (1) advance written notice of the claimed violation, no less than 24 hours before appearing before the Adjustment Committee; (2) an opportunity to call witnesses and present relevant documentary evidence in his or her defense, when consistent with institutional safety and correctional goals; and (3) a written statement by the fact finders as to the evidence relied upon and the reasons for disciplinary action. *Id.* at 563–67, 94 S.Ct. at 2978–80; *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992) (citations omitted).

In the present case, the record indicates that Mr. Geder has received all of the procedural safeguards set forth in *Wolff.* First, Mr. Geder received advance written notice of the charges (the disciplinary ticket) on October 15, 1991, six days before the first Adjustment Committee hearing. Second, Mr. Geder was present at the first Adjustment Committee hearing, where he pled not guilty to the charges against him, presented evidence of his innocence, and requested Sgt. Tadlock's appearance as a witness on his behalf. As such, the second requirement is satisfied, despite the fact that Mr. Geder was not given the opportunity to attend the second hearing. *See Rasheed–Bey v. Duckworth, supra,* 969 F.2d at 361 ("[i]nmates have no right to confront and cross examine adverse witnesses" at disciplinary proceedings). Third, Mr. Geder received the Adjustment Committee Summary, which outlines the evidence relied upon by the committee and the reasons for disciplinary action. Accordingly, the Court finds that no violation of due process took place during the course of Mr. Geder's disciplinary proceedings.

█ If the procedural protections set forth in *Wolff* have been followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by "some facts." *Hanrahan v. Lane,* 747 F.2d 1137, 1141 (7th Cir.1984) (citations omitted); *Hamilton v. O'Leary,* 976 F.2d 341, 344–46 (7th Cir.1992). The role of a federal court in reviewing prison disciplinary matters is extremely limited; it may decide only "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hamilton v. O'Leary, supra,* 976 F.2d at 346 (quoting *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–74, 86 L.Ed.2d 356 (1985)); *Shreve v. Roth,* No. 91 C 3126, 1993 WL 390212, at *4 (N.D.Ill. Oct. 1, 1993). Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. *Superintendent, Massachusetts*

*Correctional Institution at Walpole v. Hill,* *supra,* 472 U.S. at 455, 105 S.Ct. at 2774.

In the present case, the evidentiary basis for the Adjustment Committee's finding of Mr. Geder's guilt is the following: (1) the testimony of Sgt. Tadlock, Mr. Geder's witness, who stated that he did not know anything about the incident; (2) the testimony of Mr. Williams, who stated that he witnessed the incident and that the disciplinary report was true as written; and (3) the testimony of Lt. Manning, who made a positive photo identification of Mr. Geder and stated that the disciplinary report was true as written. Certainly, the eyewitness testimony of Lt. Manning and Mr. Williams could support the conclusion reached by the Adjustment Committee. *See, e.g., Saenz v. Young,* 811 F.2d 1172, 1174 (7th Cir.1987). Since the "some facts" standard has been easily met in this case, summary judgment will be granted on Mr. Geder's claims challenging the constitutionality of the disciplinary proceedings as to all defendants.[4]

### 3. Segregation

Mr. Geder next claims that the defendants violated due process by placing him in segregation during the investigation and by failing to provide him with his court documents and other personal property during his stay in segregation. The U.S. Supreme Court has held that the federal constitution itself does not create a liberty interest in remaining out of temporary segregation; to the contrary, "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms,* 459 U.S. 460, 467–68, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). Likewise, the Seventh Circuit has repeatedly held that Illinois statutes and regulations do not create a liberty interest in remaining in the general prison population or in avoiding temporary confinement pending the outcome of a disciplinary hearing. *See Pardo v. Hosier,* 946 F.2d 1278, 1281–83 (7th Cir.1991); *Woods v. Thieret,* 903 F.2d 1080, 1082–83 (7th Cir. 1990); *Cain v. Lane, supra,* 857 F.2d at 1143–45. Since Mr. Geder had no liberty interest in avoiding confinement in segregation pending the outcome of his disciplinary hearing, his placement in segregation in and of itself did not violate due process.[5]

### a. Deprivation of Personal Property

Mr. Geder's claim that he was unconstitutionally denied access to "personal property to ... take care of his personal hygiene" during his confinement in segregation does not withstand scrutiny. In *Harris v. Fleming,* 839 F.2d 1232 (7th Cir.1988), a prisoner who had been held in segregation for twenty eight days alleged that he was deprived of toilet paper for five days, that he was denied soap, a toothbrush, and toothpaste for ten days, and that he was kept in a filthy, roach-infested cell. *Id.* at 1234. In affirming the district court's entry of summary judgment in favor of corrections officials, the Seventh Circuit held that the deprivations did not violate the Constitution because the conditions were temporary and the inmate suffered no physical harm. *Id.* at 1235–36.

In the present case, the deprivations experienced by Mr. Geder were of shorter duration, *i.e.,* fifteen days, than those experienced by the plaintiff in *Harris v. Fleming.* Moreover, Mr. Geder fails to present evidence of

---

4. However, even where proceedings are not otherwise constitutionally deficient, they may be invalidated by evidence that they were retaliatory in nature. *Cain v. Lane, supra,* 857 F.2d at 1145 (citations omitted). Therefore, if the fact finder at trial finds that Mr. Geder was disciplined in retaliation for his exercise of constitutionally protected activities, the disciplinary proceedings against him would be invalid notwithstanding their compliance with due process requirements. *Id.*

5. However, prison officials may not transfer an inmate to segregation as punishment for his exercise of fundamental constitutional rights. *Williams v. Faulkner,* 837 F.2d 304, 309 n. 7 (7th Cir.1988) (citations omitted). Mr. Geder has a First Amendment expectation "in not being punished for the exercise of activity protected under that provision." *Buise v. Hudkins,* 584 F.2d 223, 229–30 (7th Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979). Accordingly, the fact finder will have the opportunity at trial to determine whether Lt. Manning brought Mr. Geder to segregation in retaliation for his exercise of constitutionally protected activities.

any physical harm suffered as a result of these temporary deprivations. Accordingly, the relatively brief deprivations experienced by Mr. Geder in segregation may have been uncomfortable, but it cannot be said that he was denied "the minimal civilized measure of life's necessities." *Rhodes v. Chapman, supra,* 452 U.S. at 347, 101 S.Ct. at 2399; *see also Lunsford v. Bennett,* 17 F.3d 1574, 1579–80 (7th Cir.1994).

### b. *Deprivation of Court Documents*

■■■■■ Mr. Geder's claim that he was denied access to court documents during his confinement in segregation similarly does not state a constitutional violation. It is well settled that a prisoner has a constitutional right of access to the courts for pursuing post-conviction remedies and for challenging the conditions of confinement. *Campbell v. Miller,* 787 F.2d 217, 225 (7th Cir.1986) (citations omitted). However, with exceptions not shown to be applicable here,[6] to survive a motion for summary judgment, Mr. Geder must

> allege some quantum of detriment caused by the challenged conduct of state officials *resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation.*

*Shango v. Jurich,* 965 F.2d 289, 292–93 (7th Cir.1992) (citations omitted) (emphasis in original). In this case, Mr. Geder has failed to allege or present any evidence of delay or interruption in pending or contemplated litigation resulting from this deprivation. Accordingly, he has not stated a violation of the constitutional right to meaningful access to the courts.

### 4. *Conditions of Confinement*

■■■ Finally, Mr. Geder claims that the living conditions of the B–West cellhouse and segregation unit at Stateville are so poor as to constitute cruel and unusual punishment in violation of the Eighth Amendment. In support of this claim, Mr. Geder lists a number of unsanitary conditions at Stateville, including the presence of defective pipes, sinks, and toilets, improperly-cleaned showers, a broken intercom system, stained mat-

tresses, accumulated dust and dirt, and infestation by roaches and rats.

■■ To state a violation of the Eighth Amendment, Mr. Geder must satisfy both prongs of a bifurcated test. First, he must demonstrate that, objectively, the conditions were "sufficiently serious" to be considered cruel and unusual. *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (citations omitted); *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994) (citations omitted). Second, from a subjective point of view, Mr. Geder must demonstrate that the defendants acted with a "sufficiently culpable state of mind." *Farmer v. Brennan, supra,* —— U.S. at ——, 114 S.Ct. at 1977 (citations omitted); *McNeil v. Lane, supra,* 16 F.3d at 124 (citations omitted). In prison conditions cases, that state of mind is one of "deliberate indifference" to inmate health or safety. *Farmer v. Brennan, supra,* —— U.S. at ——, 114 S.Ct. at 1977 (citations omitted).

■■■ Prison conditions are not unconstitutional simply because they are harsh and restrictive; such conditions are "part of the penalty that criminal offenders pay for their offenses against society." *Meriwether v. Faulkner,* 821 F.2d 408, 416 (7th Cir.1987) (quoting *Rhodes v. Chapman, supra,* 452 U.S. at 347, 101 S.Ct. at 2399). For a prison condition to violate the Eighth Amendment, it must result in "unquestioned and serious deprivations of basic human needs," or "deprive inmates of the minimal civilized measure of life's necessities." *McNeil v. Lane, supra,* 16 F.3d at 125 (citations omitted). As stated above, Mr. Geder lists a number of poor living conditions at Stateville. However, these conditions, viewed separately or cumulatively, are insufficient to establish a specific deprivation of a human need, such as a lack of adequate food, clothing, shelter, or medical care. *See Farmer v. Brennan, supra,* —— U.S. at ——, 114 S.Ct. at 1976. As such, Mr. Geder has failed to satisfy the objective component of this bifurcated inquiry.

Mr. Geder's failure to demonstrate "deliberate indifference" on the part of these de-

---

6. *See DeMallory v. Cullen,* 855 F.2d 442, 448–49     (7th Cir.1988).

fendants is even more glaring. A prison official

cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan, supra,* —— U.S. at ——, 114 S.Ct. at 1979. *See also Lunsford v. Bennett, supra,* 17 F.3d at 1580 ("Mere negligence does not satisfy the deliberate indifference standard. Rather, plaintiffs must demonstrate 'something approaching a total unconcern for [his] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.' ") (citations omitted).

In the present case, Mr. Geder has failed to show that any of these defendants knew of, and consciously disregarded, an excessive risk to his health or safety. In fact, one of Mr. Geder's exhibits actually refutes such a conclusion: on November 6, 1991, Warden Godinez directed the Stateville Chief Engineer to repair a broken heater and broken shower windows in Unit B–West in response to an emergency grievance filed by Mr. Geder. Complaint, Ex. 3, November 6, 1991 Memorandum to Inmate Selma Geder from Warden Salvador A. Godinez. Accordingly, Mr. Geder has also failed to satisfy the subjective component of the test. The defendants are entitled to summary judgment on Mr. Geder's Eighth Amendment claims.

### C. *Conclusion*

There are no genuine issues of material fact as to Mr. Geder's claims against Mr. Godinez, Mr. Allen, Mr. Williams, Ms. Johnson, Mr. Clevenger, Mr. Mussatto, and Mr. Acosta. Accordingly, the Court enters judgment in favor of these defendants. Summary judgment as to Mr. Geder's retaliation claim against Lt. Manning is denied. Mr. Geder's "Motions to Accept his Erratum Sheet," filed July 28, 1994 and October 24, 1994, are granted. Mr. Geder's "Motion for Admend-

ed [sic] Summary Judgment," filed September 19, 1994, is denied.