**Edward L. ROOP, Plaintiff,**

v.

**Joseph M. SQUADRITO, (Past Allen County Sheriff in His Individual Capacity); Sheriff James Herman (Sheriff of Allen County in His Official Capacity; Wanda Evans; Roger Compton; Russell Wood; Scott Stoddard) (Confinement Officers/Individual Capacity); and Kelly Wendling (Jail Nurse), Defendants.**

**No. 1:98–CV–257.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Sept. 21, 1999.

---

**3.** The Court bases its holding on the reasoning of the *Malabarba* case.

Christopher C. Myers, Myers and Geisleman, Fort Wayne, IN, for plaintiff.

John O. Feighner, Robert W. Eherenman, Haller and Colvin, Fort Wayne, IN, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the Court on a motion for summary judgment filed by the defendants on June 1, 1999. Plaintiff responded to that motion on July 26, 1999 to which defendants filed a reply on August 10, 1999.[1] For the following reasons, the

---

1. Pursuant to a telephone conference held on August 13, 1999, ruling on the motion for

motion for summary judgment will be denied.

### Factual Background and Procedural Posture

The parties set forth a litany of facts in favor or their respective positions. Those facts, however, can be parred down and, construed in plaintiff's favor, are as follows.

On May 15, 1998, plaintiff attended a concert at the Memorial Coliseum in Fort Wayne, Indiana with his mother and others. At some point his mother and stepfather got into a spat with persons sitting behind them and all involved were escorted out of the seating area. Plaintiff followed the entourage into the hallway of the arena where he was told to leave by Dan Edenfield, an Allen County Deputy Sheriff.[2] An altercation ensued and plaintiff was taken to the lock-up area of the Coliseum where it was learned that there was an outstanding warrant for his arrest. He was then transported to the Allen County Lock-up and subsequently to the Allen County Jail.

Plaintiff's jailers were informed by him that he was HIV-positive. Upon his arrival at the jail, plaintiff was given an initial medical assessment. Plaintiff claims that he was told by Sergeant Wanda Evans that he was placed there because of "your medical condition, and you having AIDS, you're going to be locked down."

Plaintiff was initially housed by himself in the old shower room—a room that had a working shower but no flushable toilet.[3] While there, he was served three meals a day but had to ask for drinking water which he got albeit, in his view, not as fast as he wanted. He was given a mattress and two blankets. He had telephone and commissary privileges. He was allowed reading material, but not that which he preferred. He claims that the room was very unsanitary and he was not given Inmate Request Forms to complain about his location and housing conditions.

After about five days in the old shower room, plaintiff was moved to cell H–3. Here again he was housed alone in a cell on the main floor, located close to the command module. Again he had a mattress, a couple of blankets, and commissary and telephone privileges. There was no toilet or shower in the cell so he would have to get a guard's attention in order to get a drink of water or to go to the bathroom. After four days there he was allowed to take a shower.[4] Again it is his position that the cell was filthy and he further asserts while in that cell he was refused restroom privileges and running water.

Four days later plaintiff was moved to cell R–7 in the same general area as his prior locations and, as before, he was housed alone. There he had a steel bunk (with mattress and two blankets), a toilet, a wash basin, and running water. He had access to the telephone and commissary, access to medication, and access to a shower every three or four days. He was also given clean clothes and the opportunity to clean his cell. When he complained of an infected toe, he was placed on sick call and prescribed antibiotics the next day.[5]

During the course of his stay at the jail, plaintiff was given medication for his HIV

---

summary judgment was deferred pending a mediation conference. Settlement obviously was not achieved at the mediation.

2. Deputy Edenfield died early the next morning as a result of a heart attack which may or may not have been in some way attributable to his run-in with plaintiff.

3. The room was located on the main floor of the jail near the command module.

4. He had earlier taken a shower two days before being moved from the old shower room to cell H–3.

5. It was later discovered that he had an ingrown toenail which he received medical treatment for some 37 days after he left the jail.

condition. He claims, however, that the medication was not prescribed correctly in that he was not given enough or that it was not given to him at the right time. There is no medical evidence that he suffered any deterioration in his condition as a result of his confinement.

Quite apart from the foregoing, plaintiff alleges that during his stay he suffered sleep deprivation at the hands of the defendants. This was so because during his first two weeks at the jail, someone would bang on· his cell door to check on him every 15 minutes causing him to be awake for much of the night. On June 1, 1998, the checks became less frequent—once an hour. Additionally, prior to being moved to cell R–7 plaintiff had to rely on the defendants to fetch him drinking water and to take him to the bathroom, a situation which sometimes was quite uncomfortable because his medical condition often gave him diarrhea.

For their part, defendants do not dispute a lot of the foregoing. They claim that the conditions of confinement were based upon legitimate governmental objectives for two reasons. First, plaintiff's medical condition required frequent monitoring and medication and there was some concern that plaintiff may have been suicidal. Second, segregation was considered to be a more secure situation for plaintiff in light of Deputy Edenfield's death. That is, he was housed as a "safekeeper" meaning that he would be accompanied by at least two officers whenever he left his cell so that no harm would come to him.

### Application of Law

Based upon his incarceration in the Allen County Jail, plaintiff filed suit in this Court against the above-named defendants alleging violations of his civil rights under 42 U.S.C. § 1983 and the American with Disabilities Act, 42 U.S.C. § 12132. After a review of the standards governing summary judgment, those claims will be considered in turn.

### A. Summary Judgment Standards

"Summary judgment is proper only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1031 (7th Cir.1998) (quoting Fed.R.Civ.P. 56(c)). While the moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record, if any, which it believes demonstrate the absence of a [genuine issue of] material fact, there is nothing in Rule 56 that requires a moving party to negate an essential element of an opponent's claim for which the opponent will bear the ultimate burden at trial." *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir.1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Rather, the standard for granting summary judgment, which mirrors the "directed verdict" standard under Rule 50(a), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), requires the district court to grant summary judgment if the record before us "could not lead a rational trier of fact to find for the non-moving party." *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir.1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The burden is therefore on the non-movant to set forth "specific facts showing that there is a genuine issue for trial." *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir.1998) (quoting Fed.R.Civ.P. 56(e)). "In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor

of that party." *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 394 (7th Cir. 1998) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513).

The nonmoving party may not rest on the allegations of the pleadings in opposing a motion for summary judgment. *Crim v. Bd. of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 540 (7th Cir.1998); Fed.R.Civ.P. 56(e). "Furthermore, a 'party needs more than a scintilla of evidence . . . to defeat summary judgment.' " *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998) (quoting *Senner v. Northcentral Technical College*, 113 F.3d 750, 757 (7th Cir.1997)); *see also Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. Moreover, "neither 'the mere existence of some alleged factual dispute between the parties,' *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2505, nor the existence of 'some metaphysical doubt as to the material facts,' *Matsushita Elec. Indus.*, 475 U.S. at 586, 106 S.Ct. at 1356, is sufficient to defeat a motion for summary judgment." *Tesch v. County of Green Lake*, 157 F.3d 465, 471 (7th Cir. 1998). Thus, a summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Essex*, 111 F.3d at 1308 (quoting *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512).

**B. Section 1983**

 To state a claim under § 1983, the plaintiff must (1) allege facts that show that the Defendants acted under color of state law, and (2) that the defendants deprived him of some right under the United States Constitution. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Moreover, "[s]ection 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Jenkins v. Keating*, 147 F.3d 577, 583 (7th Cir.1998) (quoting *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (1983)).[6]

 As a general rule, prison officials are responsible for providing the "basic necessities of civilized life." *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir.1989). This does not mean, however, that prisons or jails need be comfortable, *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981), and, in fact, "[i]nmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988). In determining whether liability should arise, a court must look at "the evolving standards of decency that mark the progress of a maturing society." *Rhodes*, 452 U.S. at 346, 101 S.Ct. at 2399 (quoting *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)).[7] The Eighth Amendment imposes

---

**6.** Importantly, plaintiff must show that the defendants he has sued somehow caused or participated in the alleged constitutional deprivations. In the present matter, some of the defendants which plaintiff has chosen to sue appear to be tangential players at best and could very well be entitled to judgment as a matter of law. Because the defendants have chosen not to severally move for, or argue, that summary judgment is appropriate with respect to an individual defendant (apart from setting forth a factual statement of the plaintiff's claim against each), but rather have chosen to move for, and discuss, summary judgment with respect to all of the defendants on all of the claims as one group, this Court will not further address this issue at this time. Plaintiff is well-advised, however, to dismiss out any claim against any of the defendants against whom there exists insufficient evidence or an inadequate legal claim.

**7.** Conditions of confinement claims brought by pre-trial detainees at county jails are evaluated under the Due Process Clause of the Fourteenth Amendment, *Bell v. Wolfish*, 441 U.S. 520, 534–35, 99 S.Ct. 1861, 1871–72, 60 L.Ed.2d 447 (1979), while those brought by convicted prisoners are evaluated under the Eighth Amendment. The rights of a pre-trial

on prison officials the duty to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). However, prison conditions violate the Eighth Amendment only in those cases where a prisoner is deprived of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399.

■ In order for liability to attach in this case, plaintiff must satisfy a test consisting of two prongs: an objective component and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Vance v. Peters*, 97 F.3d at 987, 991 (7th Cir.1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1822, 137 L.Ed.2d 1030 (1997). As has been indicated by the Seventh Circuit:

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id.*

*Vance*, 97 F.3d at 991; *see also Payne*, 161 F.3d at 1040 ("[A] detainee therefore is

protected from the 'deliberate indifference' of prison officials ....") (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1718, 140 L.Ed.2d 1043 (1998)).[8]

In their briefs, defendants make several arguments that the conditions about which plaintiff complains do not rise to the level of a constitutional violation and hence such claims must fail. Viewed in isolation, those propositions generally are correct statements of the law.

■ For example, the fact that plaintiff was required to sleep on a floor mattress for an extended period of time would be a lay-down case for the defendants since several courts in this circuit have found that the failure to provide an inmate with a bunk is not a constitutional deprivation. *See*, Clagg v. Fairman, 1997 WL 136684, *2 (N.D.Ill. March 24, 1997) (citing *Mann v. Smith*, 796 F.2d 79, 85 (5th Cir.1986); *Hines v. Sheahan*, 845 F.Supp. 1265, 1269 (N.D.Ill.1994)); *Antonelli v. Sheahan*, 863 F.Supp. 756, 760 (N.D.Ill.1994) (collecting cases), *reversed in part on other grounds*, 81 F.3d 1422, 1430 (7th Cir.1996). In fact, Magistrate Judge Cosbey of this Court in *Thomas v. Squadrito*, 98–CV–240, slip op. p. 12 (August 6, 1999) recently said as much: "the bunk the Plaintiff aspired to in the Allen County Jail is nothing more than a suspended steel platform, and this can hardly be characterized as any great improvement over a concrete floor." Plaintiff's complaint about the alleged lack of ability to exercise probably would not clear the

---

detainee are at least as great as those afforded to convicted felons, and accordingly, Eighth Amendment jurisprudence is often utilized to evaluate claims regarding conditions of confinement whether they be brought by pre-trial detainees or prisoners. *Payne v. Churchich*, 161 F.3d 1030, 1041 (7th Cir.1998); *Mathis v. Fairman*, 120 F.3d 88, 91 n. 3 (7th Cir.1997); *Zarnes v. Rhodes*, 64 F.3d 285, 289 (7th Cir. 1995) (pretrial detainees retain at least those constitutional rights that are enjoyed by convicted prisoners).

**8.** Consequently, a prison official violates either the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment

when he is deliberately indifferent to a substantial risk of serious harm to an inmate, and a finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless. *Payne*, 161 F.3d at 1041 ("A detainee establishes a § 1983 claim by demonstrating that the Defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger."); *Mathis*, 120 F.3d at 91 (citing *Farmer*, 511 U.S. at 840–42, 114 S.Ct. 1970, 1980–81, 128 L.Ed.2d 811).

Eighth or Fourteenth Amendment hurdle since plaintiff admits that he could have done sit-ups and push-ups in his cell and since he was only in the jail for some thirty (30) days. A lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point where an inmate's health is threatened. *Thomas v. Ramos*, 130 F.3d 754, 763 (7th Cir.1997) (inmate did not have a viable Eighth Amendment claim because he would have been able to engage in exercise in his cell such as push-ups, sit-ups, jogging in place, and stepups) (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir.1985), *cert. denied*, 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986)); see also *Antonelli*, 81 F.3d at 1432 (only extreme and prolonged situations where all movement is denied will amount to a constitutional violation); *Caldwell v. Miller*, 790 F.2d 589, 600 (7th Cir.1986) (confining all inmates to their cells twenty-four hours a day for a one-month period after a lockdown not a violation of the Eighth Amendment).

Complaints about not being able to shower more often than he did would not hold water, see, *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988), since the deprivation of a mere cultural amenity is not cruel and unusual punishment. *Id.* (citing *Harris v. Fleming*, 839 F.2d 1232, 1235–37 (7th Cir.1988)). Indeed, the Seventh Circuit has held that just one shower per week is constitutionally sufficient. *Id.*

Plaintiff's complaint that his cell was "filthy with dirt and fuzz on the floor," cannot be swept into a constitutional claim since that would not be, by itself, a sufficient deprivation to establish a claim. *See, e.g., Thomas v. Squadrito, supra* slip op. p. 10 ("the accumulation of dust, or dust bunnies, likewise fails to reach the level of a constitutional violation"); *Geder v. Godinez*, 875 F.Supp. 1334,1341 (N.D.Ill.1995) (accumulated dust and dirt is insufficient to establish a specific deprivation of a human need); *Wilson v. Schomig*, 863 F.Supp. 789, 795 (N.D.Ill.1994) (inmate's claim that the cell contained dust is not sufficiently serious to violate the objective standard of "cruel and unusual," and thus fails to state a claim based on the Eighth Amendment). And, the fact that plaintiff did not have toilet facilities in his cell, standing alone, would not entitle him to relief under the constitution. *Cf. Patchette v. Nix*, 952 F.2d 158 (8th Cir.1991) (temporary inconveniences caused to the inmates as a result of deficiency in toilet facilities did not violate the Eighth Amendment would be moved to a new area in a matter of months).

In sum, the conditions about which plaintiff generally complains do not in isolation rise to the objective level of seriousness necessary to establish a § 1983 claim. However, the determination whether prison conditions violate the Eighth Amendment requires a court to consider the totality of the conditions of confinement and considerations would include security and feasibility as well as the length of confinement. *See, Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir.1997); *DeMallory v. Cullen*, 855 F.2d 442, 445 (7th Cir.1988). As was indicated by the Supreme Court, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson*, 501 U.S. at 304, 111 S.Ct. at 2327 (citations omitted).

In the present matter, it cannot be said that the deprivations of which plaintiff complains would not in combination arise to a constitutional level. Taken together plaintiff's complaints include the fact that he was forced to sleep on a mattress in a filthy cell, often times without access to drinking water or a flushable toilet; he was not allowed to interact with

others because he was kept in isolation; and he was rousted from his sleep initially on the quarter hour and later on the hour.

Defendants posit legitimate reasons for the fact that plaintiff was kept where he was. As indicated there was some concern about his "safekeeping" given Officer Edenfield's death. There was also a need to monitor his HIV-positive condition since he was required to take medication. Additionally there is a question of whether he might have been suicidal raising still more concerns for plaintiff's safety.

In this Court's view, such argument lead directly into the subjective component of the test, to wit, whether the prison official had a sufficiently culpable state of mind in that they were deliberately indifferent to plaintiff. This Court is further of the view that that presents a real question of fact which simply cannot be resolved on the summary judgment record. Why was plaintiff treated the way that he was? Why was he kept in isolation? Why was he, as he contends, repeatedly awakened? Was it because he was a threat to himself such that it was done for his own well-being or was there a more nefarious reason, i.e. that it was in retaliation for Officer Edenfield's death or because plaintiff was HIV-positive? [9]

### C. Americans With Disabilities Act

 As the parties to the present lawsuit recognize, prisons and jails are public entities covered by the ADA. See, *Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). Moreover, plaintiff is a "qualified individual with a disability" since the Supreme Court has ruled that HIV infection, even in its asymptomatic form, is a disability under the ADA. See, *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entities." 42 U.S.C. § 12132. "Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and education and vocational 'programs,' all of which theoretically 'benefit' the prisoner (and any of which disabled prisoners could be 'excluded from participation in.'") *Yeskey, supra* at 1955. In fact, the Seventh Circuit has suggested that prisons may have other programs to which the ADA applies including educational programs, use of the library, visitation facilities, recreational facilities, use of dining halls, church services, substance abuse programs and college classes. *Love v. Westville Correctional Center,* 103 F.3d 558 (7th Cir.1996). Inmates who fall within the ambit of the ADA "have the same

---

**9.** The Court recognizes that defendants rely on *Anderson v. Romero,* 72 F.3d 518, 526–27 (7th Cir.1995) where the Seventh Circuit held that dismissal of a complaint which alleged that plaintiff was denied a haircut and yard privileges solely because of his HIV status was erroneous. In doing so, the Seventh Circuit indicated that if that were the only reason for refusing plaintiff a haircut or yard privileges there may have been a viable claim but also indicated that there may have been other reasons of which it was unaware of which would have been legitimate reasons for the refusal. Defendants seem to read this case as suggesting that if they forward any *conceivable reasons* for his treatment apart from the fact that plaintiff was HIV positive they are entitled to summary judgment. This Court does not read *Anderson* that broadly.

Instead, this Court reads the case as holding that legitimate penalogical reasons might exist for treating plaintiff differently than other prisoners and that such reasons might be sufficient to negate a section 1983 claim. Here, however, the court again is faced with the whole issue of the real reasons for why plaintiff was treated the way he was. Certainly, if defendants' contention that plaintiff posed a risk of suicide was a ruse for their treatment of plaintiff, they would be hard-pressed to explain why he was kept in isolation and checked on over and over again. Even the risk of suicide would not explain why, as plaintiff asserts, he was often kept waiting to go to the bathroom, a delay which was exacerbated here where plaintiff claims he had diarrhea from his medication.

interest in access to the programs, services, and activities available to the other inmates of their prison as disabled people on the outside have to the counterpart programs, services, and activities available to free people. They have no right to more services than the able-bodied inmates, but they have a right, if the Act is given its natural meaning, not to be treated even worse than those more fortunate inmates." *Crawford v. Indiana Dept. of Corrections*, 115 F.3d 481, 486 (7th Cir. 1997).

In the present matter, defendants assert that plaintiff has no ADA claim because the ADA can not be used as a basis to bring an action for inappropriate medical care (*citing, Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996)) and because he was treated no differently than others who were housed in the receiving area of the jail because of security concerns. Unquestionably, the ADA does not trump legitimate penalogical concerns:

> the defendant may be able to show that there was no reasonable accommodation that would have enabled the plaintiff to participate in the programs or services that he complains about being excluded from, or may be able to show that any necessary accommodation would impose an undue burden on the prison system. Terms like "reasonable" and "undue" are relative to circumstances, and the circumstances of a prison are different from those of a school, an office, or a factory, as the Supreme Court has emphasized in the parallel setting of prisoners' constitutional rights. *E.g., Turner v. Safley, supra*, 482 U.S. at 84–91, 107 S.Ct. at 2259–63. The security concerns that the defendant rightly emphasizes in urging us to exclude prisoners from the protections of the Act are highly relevant to determining the feasibility of the accommodations that disabled prisoners need in order to have access to desired programs and services.

*Crawford, supra* at 487.

██ While all that may be so, given this Court's foregoing discussion in regard to plaintiff's section 1983 claims, it appears to beg the question of why plaintiff was placed in the receiving area in the first place. When the facts and inferences that are derived therefrom are construed in plaintiff's favor a genuine issue exists as to why he was treated the way that he was. Without doubt he was not treated as a normal inmate—he did not have the same access to programs, activities and services as inmates in the general population—and the question is why that was so. That question and others are unresolvable on this record making summary judgment inappropriate.

### Conclusion

On the basis of the foregoing, the Motion for Summary Judgment filed by the defendants on June 1, 1999 is hereby DENIED.